SEAN P. NALTY, CA Bar No. 121253
sean.nalty@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: 415-442-4810
Facsimile: 415-442-4870

Attorneys for Defendant
CVS PHARMACY, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DUBIN, on behalf of himself and all others similarly situated PLAINTIFF,<br><br>   Plaintiff,<br><br>  v.<br><br>CVS PHARMACY, INC., a Rhode Island Corporation; and DOES 1 through 100, Inclusive<br><br><br>   Defendants. | Case No. 2:25-cv-05931-SPG-MBK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS.**<br><br>Complaint Filed: June 4, 2025<br>Trial Date:  None Set |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    SUMMARY OF ARGUMENTS ............................................. 1

III.   PERTINENT FACTS AND ALLEGATIONS ....................... 3

IV.   LEGAL ARGUMENT ......................................................... 4

    A.    Plaintiff Lacks Article III Standing to Challenge the Tobacco Surcharge in his Third, Fifth, and Sixth Causes of Action. ................................................................. 4

    B.    ERISA Preempts Plaintiff's Seventh Cause of Action, Based on Alleged Violation of the California Insurance Code, Because the HSP Was Not an Insured Plan and Is Not Subject to State Insurance Law. .............................. 6

         1.    Plaintiff's Seventh Cause of Action "Relates To" An ERISA Plan and is Preempted. ....................... 8

         2.    Plaintiff's Insurance Code Claim is Preempted Because the HSP is Self-Funded ......................... 10

    C.    Plaintiff's Third and Fifth Causes of Action fail because there is no indication the Plan failed to comply with federal law by not making a RAS available to Plaintiff's spouse. ........................................................ 13

    D.    Alternatively, to the extent Plaintiff's Third and Fifth Causes of Action are based on agency regulations, those regulations are inapplicable because they contradict the authorizing statute. ......................................... 15

    E.    Plaintiff's Sixth Cause of Action, alleging fiduciary breach on behalf of the Plan, fails because (a) Plaintiff is seeking individual relief and not relief on behalf of the Plan, (b) the alleged action was not a fiduciary function, and (c) there is no allegation of misuse of plan assets. ............... 17

         1.    Plaintiff does not plausibly allege an injury to the Plan ........................................................ 17

2.    Plaintiff does not plausibly allege a fiduciary act on Defendant's part...................................................... 19

3.    Plaintiff Does Not Plausibly Allege a Misuse of Plan Assets ................................................................... 21

V.    CONCLUSION........................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
    supra, 542 U.S. ............................................................................. 7

*Aetna Life Ins. Co. v. Young*,
    2025 WL 1357427 (C.D. Cal. Apr. 15, 2025) ................................. 9

*Anderson v. Diamondback Inv. Grp., LLC*,
    117 F.4th 165 (4th Cir. 2024) ..................................................... 16

*Arnett v. Aetna Life Ins. Co.*,
    2016 WL 6883203 (S.D. Tex. Apr. 14, 2016) ............................... 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................... 15

*Bafford v. Northrop Grumman Corp.*,
    994 F.3d 1020 (9th Cir. 2021) ..................................................... 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................... 15

*Bokma v. Performance Food Group, Inc.*,
    2025 WL 1452042 (E.D. Va. May 20, 2025) ............................. 6, 18

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*,
    103 F.4th 597 (9th Cir. 2024) ...................................................... 8, 9

*Chevron*, 467 U.S. at 843, n. 11, 104 S.Ct. 2778 ................................ 16

*Chirinian v. Travelers Companies, Inc.*,
    2025 WL 2147271 (D. Minn. Jul. 29, 2025) ............................... 18

*Coast Surgery Ctr. v. United Healthcare Ins. Co.*,
    2024 WL 5679158 (C.D. Cal. Oct. 25, 2024) ............................... 8

*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019) ......................................................... 8

*Discovery House LLC v. Cigna Corp.*,
    2024 WL 3086554 (C.D. Cal. June 12, 2024)........................................................9

*Fisher v. GardaWorld Cash Serv., Inc.*,
    2025 WL 2484271 (W.D.N.C. Aug. 28, 2025)..............................................18, 21

*FMC Corp. v. Holliday*,
    498 U.S. 52 (1990) .................................................................................8, 11, 12

*GHS Health Maint. Org., Inc. v. United States*,
    536 F.3d 1293 (Fed. Cir. 2008) ...........................................................................17

*Grae v. Corr. Corp. of Am.*,
    57 F.4th 567 (6th Cir. 2023) ..................................................................................6

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ...............................................................................................5

*Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav.*
    *Program*,
    997 F.3d 848 (9th Cir. 2021) ..................................................................................8

*Keger v. Env't Sys. Prods., Inc.*,
    No. 1:12 CV 1228, 2013 WL 1343526 (N.D. Ohio Mar. 28, 2013).................20

*Lewis v. Casey*,
    518 U.S. 343 (1996) ...............................................................................................5

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) .............................................................................................19

*Loper Bright*, 603 U.S. 369, 393 (2024)............................................................16, 17

*Massachusetts Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) .............................................................................................18

*Mehlberg v. Compass Group USA, Inc.*,
    2025 WL 1260700 (W.D. Mo. Apr. 15, 2025).................................................6, 18

*Metropolitan Life Ins. Co. v. Massachusetts*,
    471 U.S. 724 (1985) .......................................................................................10, 11

*Moon v. BWX Techs., Inc.*,
    577 F. App'x 224 (4th Cir. 2014)........................................................................20

*Paulsen v. CNF Inc.*,
    559, F.3d 1061, 1072 (9th Cir. 2009) ................................................................. 4, 6

*Pegram v. Herdich*,
    530 U.S. 211 (2020) ................................................................................................ 19

*Ragsdale v. Wolverine World Wide, Inc.*,
    535 U.S. 81 (1997) .................................................................................................. 17

*Rutledge v. PCMA*,
    592 U.S. 80 (2020) ............................................................................................ 11, 12

*Scharff v. Raytheon Co. Short Term Disability Plan*,
    581 F.3d 899 (9th Cir. 2009) ................................................................................. 11

*Sec. of Labor v. Macy's, Inc.*,
    2021 WL 5359769 (S.D. Ohio Nov. 17, 2021) ................................ 18, 19, 20, 21

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) .................................................................................................. 12

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020) ............................................................................................. 4, 6

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ......................................................................................... 4, 5, 6

*United States v. Adair*,
    38 F.4th 341 (3d Cir. 2022) ................................................................................... 17

*Williby v. Aetna Life Ins. Co.*,
    867 F.3d 1129 (9th Cir. 2017) ............................................................................... 11

*Wise v. Verizon Communications, Inc.*,
    600 F.3d 1180 (9th Cir. 2010) ............................................................................... 18

**Statutes**

29 U.S.C. §1002(1) ........................................................................................................ 7

29 U.S.C. § 1109(a) ..................................................................................................... 17

29 U.S.C. §1132(a)(2) ........................................................................................... *passim*

29 U.S.C. §§ 1132(a)(2) and 1132(a)(3) ....................................................................... 1

29 U.S.C. §1144(b)(2)(A) ...................................................................................... 7

29 U.S.C. §1144(b)(2)(B) ................................................................................ 7, 10

29 U.S.C. §1144(b)(b)(2)(A) ............................................................................... 10

29 U.S.C. § 1182 ................................................................................................ 15

29 U.S.C. § 1182(b)(2) ......................................................................................... 4

29 U.S.C. §1182(b)(2)(B) ..................................................................................... 2

29 U.S.C. §1182 and §1185d ............................................................................... 2

29 U.S.C. §1185d .................................................................................... 2, 5, 16

29 U.S.C. §2590.702(f)(6) .................................................................................. 14

42 U.S.C. §300gg-4(j)(3) ...................................................................................... 2

42 U.S.C. § 300gg-4(j)(3)(D) ............................................................................... 5

42 U.S.C. §300gg-4(j)(3)(D)(i)(I) and (II) ............................................................ 2

42 U.S.C. §300gg-4((j)(3)(D)(i)).4F .................................................................. 16

Cal. Ins. Code §10965.9(a) ................................................................................ 12

Employee Retirement Income Security Act of 1974 .............................................. 1

ERISA ................................................................................................................... 1

ERISA, 29 U.S.C. § 1144 ..................................................................................... 7

ERISA, §1132(a)(3) ......................................................................................... 1, 2

ERISA, §1144(a) ................................................................................................... 7

Public Health Service Act, 42 U.S.C. §300gg-4 .................................................. 2

**Other Authorities**

29 C.F.R. § 2509.75-8 ........................................................................................ 20

29 C.F.R. §2590.702(f)(3)(iv) ¶ 38 .................................................................... 16

71 Fed. Reg. at 75019 ......................................................................................... 16

Fed.R.Civ.P. 12(b)(1) .................................................................................................. 1

*Paulson*, at 1073 ........................................................................................................ 4

Rule 12(b)(6) ............................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION

Christopher Dubin ("Plaintiff"), alleges four causes of action against CVS Pharmacy, Inc. ("Defendant") under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3). The Third, Fifth, and Sixth Causes of Action arise from employee health plan contributions that include surcharges for his spouse/partner's (hereafter "spouse") tobacco use.[1] The Seventh Cause of Action arises from the tobacco use surcharge and a working spouse surcharge; Plaintiff alleges that both surcharges violate the California Insurance Code. Plaintiff's claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) because Plaintiff lacks Article III standing to challenge the tobacco surcharge and under Rule 12(b)(6) because Plaintiff's various causes of action fail to state a claim upon which relief can be granted.

## II.    SUMMARY OF ARGUMENTS

Plaintiff claims that he contributes to his employer-sponsored ERISA health plan ("Plan"), including additional contributions for Plaintiff and his spouse because they use tobacco ("Tobacco Surcharge"), as well as a contribution for Plaintiff to cover his spouse because she has subsidized health coverage available at her place of employment ("Working Spouse Surcharge") (collectively "Surcharges"). First Amended Complaint ("FAC"), ¶ 17-18.

Plaintiff concedes that the Plan is governed by ERISA and purports to bring all his claims under ERISA. Plaintiff's Third, Fifth, and Sixth Causes of Action allege that the Tobacco Surcharge for Plaintiff's spouse violates ERISA's wellness plan requirements. Plaintiff's Seventh Cause of Action, while ostensibly brought under ERISA, §1132(a)(3), alleges the Surcharges violate the California Insurance Code.

---

[1] Plaintiff's first amended complaint does not have a first, second, or fourth cause of action. The only claims are the third, fifth, sixth and seventh causes of action.

ERISA's wellness plan requirements are codified at 29 U.S.C. §1182 and §1185d. Section 1185d incorporates wellness plan provisions of the Public Health Service Act ("PHSA"), 42 U.S.C. §300gg-4. While ERISA and the PHSA generally prohibit health plans from basing eligibility on a health status factor, the statutes permit health plans to make premium adjustments (discounts, surcharges, etc.) based on health status factors where the adjustments are for "adherence to programs of health promotion and disease prevention" (i.e., "wellness programs"). 29 U.S.C. §1182(b)(2)(B); 42 U.S.C. §300gg-4(j)(3). Among other things, the statutes require that a wellness program offer a "full reward" (e.g., waiver of a surcharge) to all similarly situated individuals. This requirement is satisfied where, in lieu of a specified outcome (e.g., cessation of tobacco use), the plan also provides a "reasonable alternative standard" ("RAS") where it is "unreasonably difficult due to a medical condition" or is "medically inadvisable" for the individual to achieve the desired outcome. 42 U.S.C. §300gg-4(j)(3)(D)(i)(I) and (II). Plaintiff alleges that the Plan only offers an RAS to employees but not to spouses who use tobacco. FAC, ¶¶ 39-44.

Plaintiff's FAC should be dismissed:

- There is no Article III standing because there are no allegations that Plaintiff's spouse ever qualified for or even sought a RAS.

- Plaintiff's Seventh Cause of Action under ERISA, §1132(a)(3), alleging both Surcharges violate the California Insurance Code, is preempted because self-funded ERISA plans are not subject to state insurance laws.

- Plaintiff's Third and Fifth Causes of Action, brought under ERISA, 29 U.S.C. §1132(a)(3), allege there is no RAS for spouses. Those claims fail because Plaintiff's conclusion is based on a gross misreading of a Plan document and because other plan documents confirm that a RAS *is* available to spouses.

- Alternatively, Plaintiff's Third and Fifth Causes of Action fail because the authorizing statute requires a RAS only for individuals for whom it is "unreasonably difficult" due to a medical condition or "medically inadvisable" to cease using tobacco. There are no allegations that Plaintiff's spouse satisfied either of these conditions.

- Plaintiff's Sixth Cause of Action also focuses on his spouse's Tobacco Surcharge and alleges a breach of fiduciary duty claim on behalf of the Plan under 29 U.S.C. §1132(a)(2). In addition to the issues undermining Plaintiff's Third and Fifth Causes of Action, this claim does not state a plausible claim for relief under §1132(a)(2) because (a) Plaintiff's claim is for individual relief, not relief for the Plan; (b) neither the creation nor the implementation of the Tobacco Surcharge involved a fiduciary function, so could not lead to a fiduciary breach, and (c) Plaintiff has not plausibly pled a misuse of plan assets, as required under §1132(a)(2).

## III.  PERTINENT FACTS AND ALLEGATIONS

Plaintiff alleges that he is a current employee in California and that he is enrolled in the Plan.[2] FAC, ¶¶ 5, 11, & 16.  Plaintiff and his spouse were enrolled in Defendant's Aetna Health Savings Plan 3 ("HSP"). The HSP Plan document states that the Plan is self-funded by contributions from Defendant and participating employees. *See, e.g.,* Defendant's Request for Judicial Notice ("RJN"), Ex. 3, p. 127. The HSP confirms that it is part of an ERISA plan. *Id.* at pp. 7, 121-122, 127.

Plaintiff alleges that he was required to contribute to the Plan and that his contribution included Tobacco Surcharges for Plaintiff and his spouse as well as a Working Spouse Surcharge. FAC, ¶¶ 17-19. Plaintiff contends that where the Plan requires cessation of tobacco use to avoid the Tobacco Surcharge, the regulations require the Plan to offer a RAS to similarly situated individuals in lieu of tobacco cessation. While Plaintiff concedes the Plan offers a RAS for covered employees, he alleges it does not offer a RAS for spouses. FAC, ¶¶ 39-44, 57-78. Plaintiff also alleges the Surcharges violate the California Insurance Code. FAC, ¶¶ 28-33, 80-85. Specifically, Plaintiff alleges that California insurance law prohibits health insurance contributions that are not based on age, geographic location, and whether the plan covers an individual or a family. FAC, ¶¶ 29-30. Plaintiff seeks "all money, interest, and cost of suit, including attorney's fees." FAC, ¶ 2.

---

[2] Defendant takes its facts from the allegations in the FAC and from Defendant's request for judicial notice. Defendant does not admit the allegations in the FAC.

## IV.  LEGAL ARGUMENT

### A.  Plaintiff Lacks Article III Standing to Challenge the Tobacco Surcharge in his Third, Fifth, and Sixth Causes of Action.

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A*., 590 U.S. 538, 547 (2020).  To satisfy Article III standing, Plaintiff must show that (i) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) the injury was traceable to the defendant's legal violation; and (iii) the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021); *Paulsen v. CNF Inc.*, 559, F.3d 1061, 1072 (9th Cir. 2009). Suing on the Plan's behalf does not excuse Plaintiff from establishing individual standing. *Paulson*, at 1073; *Thole*, at 543. The FAC fails to allege that the Tobacco Surcharge harmed Plaintiff or his spouse, and this standing defect is fatal to Plaintiff's Third, Fifth, and Sixth Causes of Action.

Plaintiff concedes that ERISA permits a health plan to employ a Tobacco Surcharge as part of a "program[] of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2); FAC, ¶¶ 36-39. Plaintiff alleges that where a Tobacco Surcharge requires participants to cease tobacco use to avoid the surcharge, it must also offer a RAS as an alternative to tobacco cessation. Plaintiff concedes that the Plan offers a RAS to employees but alleges that the Plan does not offer a RAS *to spouses* who use tobacco.

Plaintiff's argument that a RAS is not available to spouses is based entirely on the following language from the HSP SPD:

> Colleagues and spouse/partners enrolled in the HSP may be subject to an annual $500 surcharge if they use tobacco/nicotine or non-FDA-approved nicotine-based products (including vaping) four or more times per week. If subjected to the surcharge, the surcharge will be deducted from your paychecks pro-rata per pay period. For questions regarding the surcharge or your tobacco/nicotine status, and for information on how you may satisfy an alternative standard to avoid the $500 surcharge

-- contact *CVS Health HR Service Center* at **1-888-694-7287**; the *CVS Health HR Service Center* will work with you (and, if you wish, your doctor) to satisfy the alternative standard.

RJN, Ex. 3, p. 22; FAC, ¶¶ 19, 39. Plaintiff assumes and asserts that the words "you" and "your" in reference to the RAS, as used in this paragraph, in fact apply only to employees (i.e., colleagues), to the exclusion of any others. Despite the cited provision including no such language, Plaintiff then asserts that the Plan does not provide a RAS to spouses. Plaintiff cites no facts whatsoever to support his assertion that the cited provision contains an unwritten exclusion for spouses.

Allegations (especially those based on unwritten, unarticulated assumptions) are not facts. Plaintiff nowhere alleges that his spouse confirmed, inquired about, attempted to comply with, or even contemplated complying with a RAS herself. Plaintiff also does not allege that his spouse would have been unable to satisfy the tobacco-free standard because it was "medically inadvisable" or "unreasonably difficult due to a medical condition," for her to cease tobacco use, conditions that the statute requires for an individual to be eligible for a RAS. *See* 42 U.S.C. § 300gg-4(j)(3)(D); 29 U.S.C. §1185d (incorporating the PHSA into ERISA). At best, Plaintiff alleges that the wellness program may have injured some hypothetical Plan participants. However, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross").

Plaintiff similarly fails to allege that his spouse's conduct would have changed or that his spouse was injured by allegedly not receiving notices advising of a RAS for spouses, especially since his spouse would not have been personally responsible for paying any allegedly higher premiums as a result of her not completing a RAS. To allege harm due to lack of notice, a plaintiff must identify "'downstream consequences' from failing to receive the required information." *TransUnion*, 594

U.S. at 442 (citation omitted). An "asserted informational injury that causes no adverse effects cannot satisfy Article III." *Id*. (citation omitted). Or as one court explained, "a chorus of precedent all sings the same tune: to have standing, litigants must have suffered adverse effects from the denial of information." *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 571 (6th Cir. 2023). Those adverse effects must be concrete and pled with specificity. To the contrary here, all Plaintiff offers is vague speculation that someone hypothetically might have been persuaded to participate in a RAS, which plainly is insufficient to "plausibly and clearly allege a concrete injury." *Thole*, 590 U.S. at 544. Even if Plaintiff prevails in his claims, neither he nor his spouse will receive a "penny more" because his spouse remained a tobacco user who did not participate or attempt to participate in a RAS. *Id*., at 541; *see also Paulsen*, at 1073 (no Article III standing where plaintiffs could not plausibly allege that they had a stake in the outcome). Plaintiff does not allege that his spouse ever sought or even desired to enroll in a RAS or that his spouse would have enrolled but for alleged Plan defects. Consequently, Plaintiff has not suffered a concrete injury traceable to Defendant's alleged actions.[3]

> **B.    ERISA Preempts Plaintiff's Seventh Cause of Action, Based on Alleged Violation of the California Insurance Code, Because the HSP Was Not an Insured Plan and Is Not Subject to State Insurance Law.**

There is no dispute that the HSP is an ERISA employee welfare benefit plan. In fact, all of Plaintiff's claims are based on ERISA. The difference between Plaintiff's Third, Fifth, and Sixth Causes of Action and his Seventh Cause of Action is that the former are based on alleged violations of ERISA, whereas the Seventh is based on alleged violation of state law, and specifically, the California Insurance

---

[3] Defendant acknowledges certain district court decisions finding standing to challenge tobacco surcharge programs, though holdings on the subject are hardly uniform. To Defendant's knowledge, there are as yet no circuit court decisions on the subject. Also, the district court decisions do not adequately address why standing would exist under *Thole* and *TransUnion*. *See, e.g., Bokma v. Performance Food Group, Inc.*, 2025 WL 1452042 (E.D. Va. May 20, 2025) and *Mehlberg v. Compass Group USA, Inc.*, 2025 WL 1260700 (W.D. Mo. Apr. 15, 2025).

Code. FAC, ¶¶ 28-33, 80-85. Because ERISA preempts the state law that forms the basis for the Seventh Cause of Action, Plaintiff fails to state a plausible claim for relief.

ERISA defines an employee welfare benefit plan as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance or otherwise* . . . medical, surgical, or hospital care or benefits . . . ." 29 U.S.C. §1002(1) (emphasis added).

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, *see* ERISA, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, supra, 542 U.S. at 208 (Quoting *Alessi v. Raybestos–Manhattan, Inc*., 451 U.S. 504, 523 (1981).) Specifically, ERISA, §1144(a) expressly preempts all state laws that "relate to" an ERISA plan.

But that is not the end of ERISA preemption. ERISA also includes a saving clause that exempts from preemption state laws that "regulate insurance." 29 U.S.C. §1144(b)(2)(A). ERISA then restores preemption for benefit plans that are not insured. Known as the "deemer clause," the statute prohibits state insurance laws from being applied to self-funded (non-insured) ERISA plans. 29 U.S.C. §1144(b)(2)(B). The Supreme Court explained the impact of the deemer clause as follows:

> By forbidding States to deem employee benefit plans "to be an insurance company or other insurer … or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded **ERISA** plans are exempt from state regulation insofar as that regulation

"relate[s] to" the plans . . . State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws.

*FMC Corp. v. Holliday,* 498 U.S. 52, 61 (1990).

The HSP that covered Plaintiff and his spouse is a non-insured, self-funded plan. The plan documents state as follows:

**Source of Contributions**

Employer and employee

**Type of Administration**

The HSP is self-insured and administered by Aetna.

(Emphasis in original.) RJN, Ex. 3, p. 127. Because the HSP is self-funded, it is not subject to regulation under state insurance laws.

1. <u>Plaintiff's Seventh Cause of Action "Relates To" An ERISA Plan and is Preempted.</u>

There should be no debate that Plaintiff's California Insurance Code claim, as Plaintiff attempts to apply it, "relates to" an ERISA plan. Two categories of state laws "relate to" an ERISA plan—claims that have a "reference to" an ERISA plan, and claims that have an impermissible "connection with" an ERISA plan. *Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 665 (9th Cir. 2019) (quoting *Gobeille v. Liberty Mut. Ins. Co*., 577 U.S. 312, 319 (2016)); *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program,* 997 F.3d 848, 858 (9th Cir. 2021).

Plaintiff's Seventh Cause of Action has a "reference to" an ERISA plan. In *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co*., 103 F.4th 597, 602 (9th Cir. 2024), the Court explained that "[a] state-law claim has a reference to an ERISA plan if it is premised on the existence of an ERISA plan' or if the existence of the plan is essential to the claim's survival." *Id*. at 602. *See also Coast Surgery Ctr. v. United Healthcare Ins. Co*., 2024 WL 5679158, at *5 (C.D. Cal. Oct. 25, 2024)

("Under the first category, 'the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival. If so, a sufficient 'reference' exists to support preemption.'") (Quoting *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004).); *Discovery House LLC v. Cigna Corp.*, 2024 WL 3086554, at *6 (C.D. Cal. June 12, 2024) (state law claims are expressly preempted by ERISA where the ERISA claims were based on the same conduct as the state law claim.)

While the California Insurance Code itself may not have a "reference to" ERISA plans, Plaintiff's attempt to apply the provisions of that state law to the HSP does have a reference to an ERISA plan. In fact, Plaintiff's entire claim is premised on the existence of an ERISA plan and the terms of an ERISA plan, because the Surcharges that Plaintiff challenges exist solely because of an ERISA plan, making the existence of the ERISA Plan essential to Plaintiff's state law claim.

Plaintiff's Seventh Cause of Action also has an impermissible "connection with" an ERISA plan. The court in *Bristol* found that this connection is established if the state law claim addresses a "central matter of plan administration or interferes with nationally uniform plan administration, or if it bears on an ERISA-regulated relationship." *Id*. at 604. State law claims are preempted when they "unduly intrude on a central matter of plan administration" which, in *Bristol*, was a pre-treatment phone call used by Cigna to verify coverage. *Id*. at 604. *See also*, *Aetna Life Ins. Co. v. Young*, 2025 WL 1357427, at *5 (C.D. Cal. Apr. 15, 2025) (state law fraud and negligence claims based on Aetna's review and payment processes were preempted under the impermissible connection with test.)

Plaintiff's state law claim satisfies the "connection with" preemption prong. First, the scope of the alleged class action establishes, on its face, that the application of the Surcharges is a central matter of plan administration. By alleging a cause of action under ERISA based on assessment of the Surcharges, Plaintiff admits that this matter involves the administration of the ERISA Plan.

Plaintiff's state law claim also has an impermissible connection with an ERISA plan because it interferes with nationally uniform plan administration. Under Plaintiff's theory, Defendant must comply with the California Insurance Code for employees enrolled in the HSP who live and work in California and is then required to comply with potentially 49 other states' laws for employees who participate in the HSP in other states. This destroys any semblance of nationally uniform plan administration because it purports to subject the administration of the HSP to the state laws in each jurisdiction in which the Surcharges are assessed.

Finally, Plaintiff's state law claim "bears on an ERISA-regulated relationship." The Seventh Cause of Action bears directly on the relationship between Defendant, as plan sponsor and administrator, and participants and beneficiaries in the plan. The Complaint on its face conclusively establishes that the state law claims bear on an ERISA-regulated relationship. Plaintiff's state law cause of action "relates to" an ERISA plan and is preempted.

### 2. Plaintiff's Insurance Code Claim is Preempted Because the HSP is Self-Funded.

To the extent Plaintiff attempts to argue that his insurance code claim is "saved" from preemption as a state law that "regulates insurance," Plaintiff would be wrong. While ERISA exempts from preemption certain state laws that "regulate insurance," 29 U.S.C. §1144(b)(b)(2)(A), it restores preemption to ERISA plans that are not insured, *i.e,* that are self-funded, 29 U.S.C. §1144(b)(2)(B). In other words, a plan that funds benefits "through the purchase of insurance," must accept regulation by state laws that apply to the insurance policy. *See, e.g., Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 729-30 (1985) (state mandated benefit health insurance law "relates to" ERISA plans but is saved from preemption as applied to ERISA plans that purchase insurance coverage). However, a self-funded (i.e., non-insured) ERISA plan is immune from state insurance regulation because it does not purchase an insurance policy. State regulations, including laws that regulate

insurance, are preempted by ERISA under the deemer clause and do not apply to non-insured plans. *See FMC Corp.,* 498 U.S. at 52, 61, 64 ("Our interpretation of the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer's insurance contracts; **if the plan is uninsured, the State may not regulate it.**") (Emphasis added.) *See also*, *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 907 (9th Cir. 2009) ("[U]nder ERISA's 'deemer clause,' state insurance regulation of self-funded plans is preempted by ERISA.")

In *Williby v. Aetna Life Ins. Co*., 867 F.3d 1129, 1136 (9th Cir. 2017), the Ninth Circuit reaffirmed that self-funded plans cannot be regulated by the Insurance Code:

> On the other hand, if the state law is applied to an ERISA plan itself, which is how such laws operate on self-funded plans, the law falls within the deemer clause and thus is preempted, even if it is a bona fide insurance regulation that only incidentally affects ERISA concerns. See *FMC Corp*., 498 U.S. at 64, 111 S.Ct. 403. The result is a simple, bright-line rule: 'if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it.' (Quoting *FMC, supra*.)

*See also Metropolitan Life v. Massachusetts,* 471 U.S. at 736 n. 14 (noting that Massachusetts never attempted to apply its health insurance mandated benefit law to self-funded ERISA plans "effectively conceding that such an application of [sate insurance law] would be pre-empted by ERISA's pre-emption clause").

Plaintiff had indicated he will rely on *Rutledge v. PCMA,* 592 U.S. 80 (2020). *Rutledge* held that ERISA did not preempt a state law dictating the minimum price at which pharmacy benefit managers ("PBMs") paid pharmacies for prescription drugs where it merely impacted ERISA plans by increasing the costs that PBMs passed on

to such plans. The Court found it significant that the law did not directly regulate ERISA plans. *Id.* at 88-89 ("[T]he Act does not directly regulate health benefit plans at all, ERISA or otherwise.").

Any reliance on *Rutledge* is misplaced because the California law on which Plaintiff relies is preempted by ERISA:

- *Rutledge* involved a state law that regulated third party vendors and did not regulate ERISA plans. 592 U.S. at 88-89. Here, Plaintiff purports to apply a state law directly to an ERISA-governed benefit plan. It is specious and defies commonsense for Plaintiff to argue that the law does not "relate to" an ERISA plan when Plaintiff attempts to directly apply the law to an ERISA plan.

- *Rutledge* did not involve a state insurance law. Here, the law is a state insurance law and ERISA expressly prohibits states from regulating self-funded ERISA plans as "insurers." *See, e.g., FMC Corp.,* 498 U.S. at 53 ("[Self-funded] plans may not be deemed to be insurance companies.").

- The state law here is preempted because it regulates substantive terms and does not merely create an additional "cost" indirectly passed on to the Plan. According to Plaintiff, the law would limit the substantive bases on which employers could determine when and under what conditions employees are required to contribute to the cost of a self-funded health plan. Application to the Plan would directly interfere with nationally uniform administration by requiring piecemeal application of Plan contributions across various states.

- Preemption applies because Plaintiff is attempting to use state law to prohibit what federal law permits. ERISA expressly permits tobacco surcharges as part of wellness programs and does not prohibit spousal surcharges. State law is preempted where it purports to prohibit what federal law permits. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100-03 (1983).

The California law also does not apply according to its terms. Cal. Ins. Code §10965.9(a) only applies to "*individual* health benefit plans" that are insured by a "health insurer." (Emphasis added). Defendant's ERISA Plan is not an individual plan, but instead applies to thousands of employees throughout the U.S. Also, there is no allegation that Defendant or the Plan are "health insurers" under state law.

In short, Plaintiff cannot rely on the California Insurance Code to claim that the Surcharges are unlawful because the State of California cannot regulate the HSP. Because ERISA preempts the California Insurance Code, Plaintiff fails to state a claim upon which relief can be granted and his Seventh Cause of Action must be

dismissed. Because further amendment of the Complaint cannot correct this deficiency, Plaintiff's Seventh Cause of Action must be dismissed with prejudice.

**C.      Plaintiff's Third and Fifth Causes of Action fail because there is no indication the Plan failed to comply with federal law by not making a RAS available to Plaintiff's spouse.**

Plaintiff's claim that the Plan does not provide a RAS for spouse Tobacco Surcharges, in addition to assuming facts not pled, also misreads the language of the HSP. The paragraph discussing the Tobacco Surcharge is premised with the statement that the Tobacco Surcharge applies to "Colleagues and spouse/partners enrolled in the HSP." RJN, Ex. 3, p. 22 (emphasis added). The subordinate provision then provides additional information regarding the RAS, providing the phone number for the resource for questions regarding the surcharge "or your tobacco status" and for information on how "you" may satisfy an alternative standard. The full paragraph reads:

> Colleagues and spouse/partners enrolled in the HSP may be subject to an annual $500 surcharge if they use tobacco/nicotine or non-FDA-approved nicotine-based products (including vaping) four or more times per week. If subjected to the surcharge, the surcharge will be deducted from your paychecks pro-rata per pay period. For questions regarding the surcharge or your tobacco/nicotine status, and for information on how you may satisfy an alternative standard to avoid the $500 surcharge – contact **CVS Health HR Service Center** at **1-888-694-7287**; the **CVS Health HR Service Center** will work with you (and, if you wish, your doctor) to satisfy the alternative standard.

(*Id.*) Plaintiff assumes, without citation to any facts whatsoever, that the terms "you" and "your" are used in the singular, are focused solely on the "colleague" (i.e., employee) and not on the spouse/partner, and must be read to affirmatively

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

incorporate an unwritten exclusion for anyone but employees. But no *facts* are pled to support the existence of any unstated exclusion.

Even a cursory review of the Plan document reveals that the terms "you" and "your" are contextual, sometimes referring to the employee and sometimes referring to the employee and the employee's covered dependents (including spouses/partners). A simple example proves the point. The first paragraph of the Introduction to the HSP states as follows:

> This Health Savings Plan (the "HSP") is an important employee benefit designed to help keep good health care affordable to *you* and *your* family. It provides benefits for preventive care and access to special programs that focus on helping *you* stay healthy, plus the coverage *you* need when faced with an illness or injury.

RJN, Ex. 3, p. 7 (emphasis added)) "You" and "your" in the first sentence are focused on the employee. However, it would be absurd to interpret "you" in the second sentence as only applying to the employee and to argue that the Plan is not intended to help other covered individuals (dependents and spouses) "stay healthy" via access to mandatory benefits for preventive care, injury, or illness.

Applying context to the paragraph discussing Tobacco Surcharges, it is clear that a RAS is intended to apply equally to employees and their spouses/partners. The paragraph on which Plaintiff relies begins with the statement that it applies to "Colleagues and spouse/partners enrolled in the HSP." There is no basis to read the rest of the paragraph as not applying to "Colleagues and spouses/partners." There is nothing in the paragraph to suggest that a RAS applies only to employees who use tobacco but affirmatively excludes spouses. Such an unstated distinction makes no sense. Finally, the notice language mirrors the Department of Labor sample notice that also uses "you" and "your" when referring to the RAS. 29 U.S.C. §2590.702(f)(6).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

The same paragraph also points employees and spouses/partners to further information about the RAS available from the CVS Health HR Service Center. FAQs available on the HR website provide in pertinent part:

> **Are there any reasonable alternatives to the surcharge?**
>
> An *enrolled colleague and/or spouse/partner* can participate in the **free** tobacco cessation program offered by MinuteClinic® or Aetna Lifestyle and Condition Coaching during the 2024-2025 plan year. Completion of one of these programs during the plan year will remove the surcharge for the 2024-2025 plan year, and *any surcharge that has been applied for the plan year will be refunded retroactively* to the beginning of the plan year.

RJN, Ex. 5, p. 2 (Q&A 11) (emphasis added).) In other words, as if it was not already clear that the RAS applies to colleagues and spouses/partners alike, the FAQs remove all doubt. Plaintiff's allegation that the RAS excludes spouses and/or that there is no notice that the RAS applies to spouses overinterprets and cherry-picks verbiage while ignoring contrary statements and is simply wrong. Plaintiff's conclusion is speculation unsupported by any facts.[4] Plaintiff's Third, Fifth, and Sixth Causes of Action must be dismissed with prejudice.

> **D. Alternatively, to the extent Plaintiff's Third and Fifth Causes of Action are based on agency regulations, those regulations are inapplicable because they contradict the authorizing statute.**

ERISA permits plan sponsors to base employee health plan contributions on "adherence to" a wellness program. 29 U.S.C. § 1182. Where a Tobacco Surcharge wellness program requires cessation of tobacco use, federal law requires a RAS, but it does so only for those who have a medical condition making it "unreasonably

---

[4] Is it now black letter law that a complaint cannot be based on mere conclusions and speculation, but must be based on allegations of actual facts sufficient to state a plausible claim for relief. *See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).*

difficult" to cease tobacco use or who demonstrate it is "medically inadvisable" for them to do so. 29 U.S.C. §1185d (incorporating 42 U.S.C. §300gg-4((j)(3)(D)(i)).[5]

Nowhere does the FAC allege any facts to support that it is "unreasonably difficult" due to a medical condition or "medically inadvisable" for Plaintiff's spouse to cease tobacco use. Apparently, Plaintiff believes that his spouse is entitled to a RAS regardless of whether she can satisfy the statutory conditions, but that is contrary to what the statute requires.

To the extent Plaintiff contends the Department of Labor regulations require a RAS for everyone, without regard to whether it is "unreasonably difficult" due to a medical condition or "medically inadvisable,"[6] this Court is not beholden to the DOL regulations as the controlling interpretation of the statute, and instead "must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright*, 603 U.S. 369, 393 (2024); *see also Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 187–88 (4th Cir. 2024) (citing *Loper Bright* in rejecting the Drug Enforcement Administration's proffered interpretation of an unambiguous statute, acknowledging that "even if it were ambiguous, we needn't defer to the agency's interpretation."). In *Loper Bright*, the Supreme Court instructed:

> [I]n an agency case as in any other, though, even if some judges might (or might not) consider the statute ambiguous, **there is a best reading all the same – "the reading the court would have reached" if no agency were involved.** *Chevron*, 467 U.S. at 843, n. 11, 104 S.Ct. 2778. It therefore makes no sense to speak of a "permissible" interpretation

---

[5] An earlier version of the wellness regulations from 2006 made this point explicit: stating that for "individuals addicted to nicotine" a RAS could be offered via a tobacco cessation program. 71 Fed. Reg. at 75019. Therefore, as of 2006, the DOL understood that a RAS need only apply to a subset of participants for whom it was unreasonably difficult or medically inadvisable to stop using tobacco. Congress expressly incorporated the 2006 regulation's "reasonable alternative" standard – with its "unreasonably difficult" or "medically inadvisable" trigger – into ERISA itself.

[6] Plaintiff apparently agrees that his spouse cannot qualify for a RAS absent a showing that she satisfies one of these conditions. The regulatory provision cited at FAC, ¶ 38, 29 C.F.R. §2590.702(f)(3)(iv), includes these requirements.

that is not the one the court, after applying all relevant interpretive tools,

concludes is best.

603 U.S. at 400 (emphasis added). Under *Loper Bright*, the DOL regulation is not controlling. *Id.* It is the Court's interpretation of ERISA and incorporated provisions of the PHSA that controls. Where the DOL regulations contradict the statutory mandate, the Court should not rely on the regulations. And without such reliance, Plaintiffs cannot plausibly allege any violation of ERISA. A regulation cannot contradict a statute and introduce an entirely new requirement. *See e.g. United States v. Adair*, 38 F.4th 341, 359 (3d Cir. 2022); *GHS Health Maint. Org., Inc. v. United States*, 536 F.3d 1293, 1297 (Fed. Cir. 2008) ("When a regulation directly contradicts a statute, the regulation must yield."); *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 86 (1997) ("A regulation cannot stand if it is arbitrary, capricious, or manifestly contrary to the statute.")

**E.    Plaintiff's Sixth Cause of Action, alleging fiduciary breach on behalf of the Plan, fails because (a) Plaintiff is seeking individual relief and not relief on behalf of the Plan, (b) the alleged action was not a fiduciary function, and (c) there is no allegation of misuse of plan assets.**

1.    Plaintiff does not plausibly allege an injury to the Plan.

Plaintiff's Sixth Cause of Action fails because Plaintiff has not alleged harm to the Plan, and does not seek relief on behalf of the Plan. Plaintiff only alleges personal harm and only seeks personal relief not cognizable under ERISA, 29 U.S.C. § 1132(a)(2).

Section 1132(a)(2) permits an action by "a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 provides for liability for breach of fiduciary duties and requires fiduciaries to "make good to such plan any losses to the plan resulting from each such breach …." 29 U.S.C. § 1109(a). A § 1132(a)(2) suit "gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual

participants as a result of a fiduciary breach." *Wise v. Verizon Communications, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (citing *LaRue v. DeWolfe, Boberg & Assoc., Inc.*, 552 U.S. 248, 256 (2008)). The primary purpose of a § 1132(a)(2) claim is to remedy a misuse of plan assets. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 (1985). As another district court evaluating a tobacco surcharge claim appropriately held, "losses to the plan (and not merely plan participants) are an essential predicate to any § 1132(a)(2) claim." *Sec. of Labor v. Macy's, Inc.*, 2021 WL 5359769, *7 (S.D. Ohio Nov. 17, 2021).

Plaintiff does not plausibly allege that the Plan suffered any losses or that his contributions were used for any purpose other than to pay Plan benefits and expenses. At most, Plaintiff allegedly suffered losses in the form of higher contributions. That is, Plaintiff alleges that he and the putative class suffered personal harm, not the Plan. *See Macy's*, 2021 WL 5359769, at *9 ("Because the Secretary is required to allege past or current (or at least imminent) losses to the Plan to bring a suit under 29 U.S.C. § 1132(a)(2), but does not and cannot allege such losses, the Secretary may not use that provision to advance his claims here.") Plaintiff's Sixth Cause of Action fails to allege a plausible basis for a claim under ERISA, §1132(a)(2). *See also Fisher v. GardaWorld Cash Serv., Inc.*, 2025 WL 2484271, *6-8 (W.D.N.C. Aug. 28, 2025) (dismissing claim under §1132(a)(2) because allegedly illegal tobacco surcharges "are all allegations of harm to individual Plan participants, not the Plan itself"); *Chirinian v. Travelers Companies, Inc.*, 2025 WL 2147271, *11-12 (D. Minn. Jul. 29, 2025) (allegedly illegal tobacco surcharges are "losses to individual plan participants [and] are not automatically losses to the plan . . . so it is unclear why improper deductions from individual employees' paychecks demonstrates a loss *to the plan*.") (emphases in original).[7]

---

[7] The *Chirinian* court specifically rejected contrary holdings in *Bokma v. Performance Food Group, Inc., supra,* and *Mehlberg v. Compass Group USA, Inc., supra.*

2.  <u>Plaintiff does not plausibly allege a fiduciary act on Defendant's part.</u>

As the Supreme Court has explained, "[i]n every case charging breach of ERISA fiduciary duty…the threshold question is…whether [the defendant] was acting as a fiduciary…when taking the action subject to complaint." *Pegram v. Herdich*, 530 U.S. 211, 226 (2020). ERISA does not "describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead, it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." *Id*. at 225-26 (citing 29 U.S.C. § 1002(21)(A)). Therefore, the fact that employers sometimes act as fiduciaries with respect to employee benefits does not prohibit them from also acting "as plan sponsors (e.g., modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." *Id*. at 225. When an employer establishes or alters the terms of a plan, it is acting as settlor and not as a fiduciary. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

Defendant acted as a settlor – not a fiduciary – when it established the Plan's tobacco cessation program. *See Secretary of Labor v. Macy's, Inc.*, 2021 WL 5359769, at *18 (S.D. Ohio Nov. 17, 2021) (plan sponsor was not acting as a fiduciary when it decided "to charge a Tobacco Surcharge for individuals who neither refrained from using tobacco products nor completed a reasonable alternative"). Faced with nearly identical allegations, *Macy's* held:

> Macy's acted as a settlor rather than a fiduciary when it created the [tobacco surcharge program]. The decision to charge a Tobacco Surcharge for individuals who neither refrained from using tobacco products nor completed a reasonable alternative was a modification of the terms of the Health Plan "to provide less generous benefits" to those employees. Indeed, the Secretary does not really dispute that "the

decision to create the Wellness Program may have been a settlor function not subject to ERISA."

2021 WL 5359769, at *18 (internal citations omitted).  In dismissing the DOL's claims, *Macy's* noted that "the Secretary could not remedy this legal defect merely by pleading more detailed factual allegations," because "there is a fundamental mismatch between the Secretary's core factual allegation (that [the sponsor] created and implemented a discriminatory wellness program) and the legal theory he advances (that [the sponsor] breached a fiduciary duty)." *Id.*

Similarly, implementation of the Tobacco Surcharge program is not a fiduciary act. Fiduciary acts require the exercise of discretion. *See, e.g., Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1025-26 (9th Cir. 2021). Ministerial functions are not fiduciary acts. *Id.* at 1028. Merely withholding premiums pursuant to the Tobacco Surcharge program in accordance with the Plan terms is not a fiduciary function. *Id.* ("calculation of pension benefits is a ministerial function that does not have a fiduciary duty attached to it"); *Keger v. Env't Sys. Prods., Inc.*, No. 1:12 CV 1228, 2013 WL 1343526, at *4 (N.D. Ohio Mar. 28, 2013) (withholding premiums from employees' paychecks "amount to 'purely ministerial functions' and do not exhibit the 'control' or 'authority' necessary to make [defendant] a fiduciary…"); *see also Arnett v. Aetna Life Ins. Co.*, 2016 WL 6883203, at *3 (S.D. Tex. Apr. 14, 2016) ("The withholding of premiums for coverage is a purely ministerial function that does not give rise to a breach of fiduciary duty."); *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 231 (4th Cir. 2014) (same).

As in Macy's, Plaintiff alleges that Defendant implemented a wellness program as designed. [See generally, FAC.]  Even if the Tobacco Surcharge violates ERISA, which it does not, establishing the Plan and implementing it as written are not actions Defendant took in a fiduciary capacity. Rather, they are "settlor" and/or ministerial functions that cannot form the basis for an ERISA fiduciary duty claim under §1132(a)(2). See 29 C.F.R. § 2509.75-8 (Question D-2) (the "[c]ollection of

contributions and application of contributions as provided in the plan" is a ministerial, not fiduciary, function because there is no exercise of discretion); *Macy's*, 2021 WL 5359769, at *18 ("decision to charge a Tobacco Surcharge" was a settlor function). Plaintiffs' breach of fiduciary duty claim in the Sixth Cause of Action should be dismissed.

> ### 3.   Plaintiff Does Not Plausibly Allege a Misuse of Plan Assets

One of the most recent court decisions analyzing tobacco surcharge allegations under ERISA, §1132(a)(2), also rejected the claim because it did not plausibly allege a misuse of plan assets. *Fisher v. GardaWorld, supra.* The court noted that the DOL has not regulated whether employer contributions to ERISA funds are plan assets and a failure to plausibly allege such facts was fatal to the plaintiff's §1132(a)(2) claim. *Id.* at *7. Likewise, the court noted that employee contributions are not plan assets "until the earliest date on which [they] can reasonably be segregated from the employer's general assets." *Id.* at *8 (quoting *Phelps v. CT Enterprises,* 194 Fed.Appx. 120, 124 (4th Cir. 2006)). Here, as in *Fisher,* there is no allegation that employee contributions were segregated from Defendant's general assets or that the contributions were used for something other than payment of plan benefits and expenses. Plaintiff's Sixth Cause of Action must be dismissed.

## V.   CONCLUSION

Plaintiff's First Amended Complaint should be dismissed with prejudice.

DATED: September 23, 2025         OGLETREE, DEAKINS, NASH, SMOAK &
                                  STEWART, P.C.


                                  By:  /s/ Sean P. Nalty
                                       Sean P. Nalty
                                       Attorneys for Defendant
                                       CVS PHARMACY, INC.