1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11

CHRISTOPHER DUBIN, on behalf of himself and all others similarly situated,

Case No. 2:25-cv-05931-SPG-MBK

12

Plaintiff,

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 15]**

13

v.

14
15

CVS PHARMACY, INC., a Rhode Island Corporation; and DOES 1 through 100, inclusive,

16
17

Defendants.

18
19

    Before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint,

20

(ECF No. 16 ("Motion")), filed by Defendant CVS Pharmacy, Inc. ("Defendant"). The

21

Court has read and considered the Motion and concluded that it is suitable for decision

22

without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered

23

the parties' submissions, the relevant law, and the record in this case, the Court GRANTS,

24

in part, and DENIES, in part, the Motion.

25

# I.    BACKGROUND

26

## A.    Factual Background

27

    The following allegations are taken from Plaintiff Christopher Dubin's ("Plaintiff")

28

First Amended Complaint ("FAC").   (ECF No. 14 ("FAC")).   Plaintiff worked as an

employee of Defendant in the State of California throughout the six-year period before the filing of this action.  (*Id.* ¶ 12).  Plaintiff alleges that Defendant violated the California Insurance Code and the Employee Retirement Income Security Act ("ERISA") by imposing certain surcharges on Plaintiff's participation in Defendant's employee Health Savings Plan ("HSP").  (*Id.* ¶ 1).

First, Plaintiff alleges that the HSP states that "[c]olleagues and spouse/partners may be subject to an annual" surcharge if they use tobacco/nicotine or non-FDA-approved nicotine-based products (the "tobacco surcharge").  (*Id.* ¶ 18).  Participants in the HSP who use tobacco four or more times per week are required to declare themselves to be tobacco users and pay an additional annual charge of $300 to $500.  (*Id.* ¶ 22).  Plaintiff alleges that this surcharge violates 29 U.S.C. § 1182(b)(1), which provides that group health insurance plans "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual."  (*Id.* ¶ 20).  Plaintiff acknowledges that ERISA carves out an exception to this rule for "programs of health promotion and disease prevention." (*Id.* ¶ 35); *see* 29 U.S.C. § 1182(b)(2)(B).  However, Plaintiff alleges that the HSP does not meet regulatory qualifications for the exception because it does not provide a means for spouses and partners to avoid the tobacco surcharge and therefore does not provide a "reasonable alternative standard for all individuals who do not meet the initial standard." (FAC ¶¶ 36, 38-39).

Second, Plaintiff alleges that the HSP states that "colleagues enrolled in the HSP will be subject to an annual $1,200 surcharge if your spouse/partner has the option to elect subsidized medical coverage through their employer, but instead enrolls in the HSP."  (*Id.* ¶ 26).  Plaintiff alleges that this surcharge (the "spouse surcharge") violates California Insurance Code § 10965.9, which provides that insurers may consider only (a) age,

(b) geographic region, and (c) whether the plan covers an individual or family, for purposes of establishing insurance rates.

Plaintiff seeks to represent a nationwide class of "[a]ll persons within the United States who paid Defendants' 'Tobacco/Nicotine' surcharge in connection with any of Defendants' plans at any time from six years prior to the filing of the Complaint to the present." (*Id.* ¶ 45). Plaintiff also seeks to represent a California subclass of "[a]ll current and former California employees of Defendants with a Tobacco/Nicotine and/or Working Sp/PartChg deduction from his or her wages as a result of his or her participation in Defendants' medical benefits plan(s) at any time from six (6) years prior to the filing of this action through the date of class certification." (*Id.* ¶ 46). On behalf of the putative class and subclass, Plaintiff asserts four claims: (1) unlawful surcharge due to Defendant's failure to provide a reasonable alternative standard to the tobacco surcharge ("Claim Three")[1]; (2) unlawful surcharge due to Defendant's failure to give required notice of the availability of a reasonable alternative standard ("Claim Five"); (3) breach of fiduciary duty by assessing the tobacco surcharge ("Claim Six"); and (4) unlawful surcharge in violation of California Insurance Code § 10965.9 ("Claim Seven"). (*Id.* at 13-18). As relief, Plaintiff seeks monetary damages, reimbursement of the allegedly unlawful surcharges, injunctive relief, and attorney's fees, among other remedies. (*Id.* at 18-20).

### B. Procedural History

Plaintiff initiated this action in Los Angeles County Superior Court on June 4, 2025. (ECF No. 1-2). Defendant removed the case to this Court on June 30, 2025. (ECF No. 1). Plaintiff filed the FAC on August 28, 2025. (FAC).

Defendant filed the instant Motion on September 23, 2025. (Mot.). The Motion is accompanied by a request for judicial notice of ten exhibits. (ECF No. 17 ("RJN")). Plaintiff filed an opposition to the Motion on October 17, 2025, (ECF No. 28

---

[1] Although Plaintiff asserts only four claims, he labels them as claims Three, Five, Six, and Seven. To avoid confusion, the Court will use these labels throughout to refer to Plaintiff's claims.

("Opposition")), as well as an objection to the RJN, (ECF No. 29 ("Objections")).  On
October 31, 2025, Defendant replied in support of the Motion, (ECF No. 32 ("Reply")),
and filed both a response to Plaintiff's Objection, (ECF No. 34 ("Reply ISO RJN")), and a
supplemental declaration seeking judicial notice of one additional document, (ECF No.
33).  In response to the supplemental declaration, Plaintiff sought and obtained leave to file
a surreply, which he filed on November 21, 2025.  (ECF No. 37 ("Surreply")).

## II.    LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include
"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.
R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant
to Federal Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is proper
when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient
facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th
Cir. 2013).  To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a
claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not
akin to a probability requirement, but it asks for more than a sheer possibility that a
defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

If a claim sounds in fraud or mistake, courts apply the heightened pleading standard
of Federal Rule of Civil Procedure 9(b), which requires such claims to "state with
particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To
meet this standard, a plaintiff must identify "[t]he time, place, and content of [any] alleged
misrepresentation," as well as the "circumstances indicating falseness" or the "manner in
which the representations at issue were false and misleading." *In re GlenFed, Inc. Sec.
Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (internal quotation marks, citation, and
alterations omitted).  Those allegations "must be specific enough to give defendants notice

of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Although the circumstances of the alleged fraud must be alleged with specificity, knowledge "may be alleged generally." Fed. R. Civ. P. 9(b).

When ruling on a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," nor must it accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III.   REQUEST FOR JUDICIAL NOTICE

Generally, at the motion to dismiss stage, courts may not consider any material beyond the pleadings when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6). *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[R]eview is limited to the complaint." (citation omitted)). If a court considers such extrinsic evidence, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, under the doctrines of incorporation-by-reference and judicial notice, courts may consider the contents of certain extrinsic documents "without converting the motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 688.

Pursuant to the "judicially created" incorporation-by-reference doctrine, courts may consider an external document to be "part of the complaint itself" if "the plaintiff refers

extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation omitted). The doctrine seeks to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* A court may also "assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* at 1003 (alterations and citation omitted). However, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

The doctrine of judicial notice, meanwhile, authorizes courts to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1), (2). Accordingly, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689 (internal quotation marks and citation omitted). A court, however, may not "take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999.

Defendant seeks judicial notice of eleven documents, which the Court will group together as follows: (1) the plan documents for the HSP from 2022-2024; (2) Defendant's Tobacco/Nicotine Surcharge Frequently Asked Questions ("FAQs") from 2022, 2024, and 2025; (3) Plaintiff's confirmation statements of benefit coverage from 2022-2026; and (4) the CVS Health Welfare Benefit Plan. (RJN at 2-3; Reply ISO RJN at 7). Plaintiff opposes the request for judicial notice as to the second, third, and fourth categories of documents. The Court will consider each of these categories in turn.

First, the Court finds that the first category of documents may be incorporated by reference into the FAC. The FAC makes extensive allegations about the content of the HSP plan documents, and these allegations form the basis for all of Plaintiff's claims. *See,*

*e.g.*, (FAC ¶¶ 18, 19, 23, 26, 39, 41).  Plaintiff does not dispute that the Court may consider these documents on a motion to dismiss.  *See* (Objections).  Accordingly, the Court considers these documents to be incorporated by reference into the FAC.  For the same reasons, the Court will take notice of the CVS Health Welfare Benefit Plan, which is the master, umbrella plan document for Defendant's welfare benefit programs.  *See* (ECF No. 33).  Because this plan forms the basis for Plaintiff's claims, it is properly before the Court on a motion to dismiss.

Second, the Court will take judicial notice of the fact that Defendant issued the FAQs but will not take notice of any reasonably disputed facts contained therein.  *See Lee*, 250 F.3d at 690.  The issuance of the FAQs is judicially noticeable because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  However, the contents of the FAQs include numerous factual statements about Defendant's policies and practices that may be subject to factual dispute.  For example, contrary to allegations in the FAC, Defendant asserts based on the FAQs that spouses and partners *can* enroll in a reasonable alternative standard to the surcharge.  *See* (Reply ISO RJN at 3).  As discussed in greater detail below, this is partially an issue of contract interpretation, and the Court need not accept as true allegations in the FAC that are no more than legal conclusions.  However, the FAQs themselves are not part of the parties' contract.  *See* (ECF No. 17-4 at 6 (stating that the FAQ is "for informational purposes only" and that "the official plan document will govern" in the event of any discrepancy)).  Thus, Defendant is asking the Court to consider extrinsic evidence to resolve the disputed factual question of whether the HSP allows spouses to participate in the reasonable alternative standard.  The Court may not do so on a motion to dismiss.  *See Khoja*, 899 F.3d at 999.  Nor may the Court consider the FAQs to be incorporated by reference into the FAC.  Although Plaintiff references "plan information documents" in the FAC, the FAQs themselves are not referenced anywhere in the FAC, and they do not form the basis for any of Plaintiff's claims.  Because the FAQs are not part of the ERISA plan, the Court will take notice only of the fact that statements contained therein were made, not of the truth of these statements.

*See Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006) ("A court may take judicial notice of the existence of matters of public record . . . but not the truth of the facts cited therein.").

Finally, the Court will take judicial notice of Plaintiff's confirmation statements to show that Defendant issued these documents and for the uncontested fact that Plaintiff and his wife were enrolled in the HSP. Again, the issuance of these documents is not subject to reasonable dispute and is therefore judicially noticeable, while Plaintiff's enrollment is already conclusively established for purposes of this Motion by allegations in the FAC. For the reasons discussed above, however, the Court will not take judicial notice of any disputed facts contained in the confirmation statements. As to Plaintiff's argument that Defendant improperly failed to redact Plaintiff's home address in these exhibits, the Court agrees that the unredacted exhibits violate Local Rule 5.2-1 and ORDERS that the unredacted exhibits at ECF No. 17-7 to 17-10 and at ECF No. 19-7 to 19-10 be STRICKEN from the record. The Court will instead refer to the redacted documents at ECF No. 31-1 to 31-4.

## IV.    DISCUSSION

### A.    Standing

Defendant first challenges Plaintiff's standing to bring claims related to the tobacco surcharge. As Defendant argues, "[t]here is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Thus, as with any other claim, an ERISA plaintiff must demonstrate at an "irreducible constitutional minimum" that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing these elements. *Id.*

Before detailing the parties' standing arguments, the Court will briefly summarize the relevant statutory and regulatory framework underlying this dispute. Under 29 U.S.C. § 1182(b)(1), a group health plan "may not require any individual (as a condition of

enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor."  Section 1182(b)(2) makes clear, however, that a group health plan may "establish[] premium discounts or rebates or modify[] otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2)(B).  Under the Affordable Care Act, Congress adopted requirements for such "programs of health promotion," which were then made applicable to group health plans under ERISA.  *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1).

Building on § 300gg-4, the Department of Labor has promulgated regulations describing permissible "nondiscriminatory wellness programs" that comply with § 1182(b), including, as relevant here, "activity-only wellness programs" that require "an individual to perform or complete an activity related to a health factor in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(iv).  Such a program is considered nondiscriminatory "only if" five requirements are met: (1) the program allows individuals to qualify for the program at least once per year; (2) the reward for the program does not exceed a prescribed percentage; (3) the program is reasonably designed to promote health or prevent disease; (4) the full reward under the program is available to all similarly situated individuals, which requires the availability of a "reasonable alternative standard" for individuals for whom compliance is "medically inadvisable" or "unreasonably difficult due to a medical condition"; and (5) the issuer of the plan discloses "in all plan materials describing the terms of an activity-only wellness program the availability of a reasonable alternative standard." *Id.* § 2590.702(f)(3).

In arguing that Plaintiff lacks standing to challenge the tobacco surcharge, Defendant suggests that Plaintiff's only asserted injury is Defendant's failure to provide a reasonable alternative standard for his spouse to avoid the tobacco surcharge. (Mot. at 12).  Defendant contends that Plaintiff has not suffered any harm as a result of this alleged deficiency because neither he nor his spouse ever "confirmed, inquired about, attempted to comply

with, or even contemplated complying with" a reasonable alternative standard. (*Id.* at 13). In addition, Defendant argues that Plaintiff has not alleged that his spouse could not comply with Defendant's tobacco-free standard because it was either "medically inadvisable" or "unreasonably difficult due to a medical condition" for her to do so. As to the claimed lack of notice of a reasonable alternative standard, Defendant argues that Plaintiff has failed to allege that his spouse's conduct would have changed if she had received notice of the availability of a reasonable alternative standard. (*Id.* at 13-14).

In opposition, Plaintiff argues that his injury was not the failure to provide a reasonable alternative standard, but rather the imposition of a tobacco surcharge that does not comply with all regulatory requirements. (Opp. at 16). Because Plaintiff alleges that the surcharge itself is illegal, Plaintiff argues that he does not need to show that he or his spouse would have qualified for the reasonable alternative standard. As to Defendant's arguments about informational injury, Plaintiff argues that the lack of notice itself makes the surcharge illegal, and the injury is the payment of this surcharge.

Upon review, the Court rejects Defendant's standing arguments. As Plaintiff argues, the injury that Plaintiff has suffered here is the paying of an allegedly unlawful surcharge, not the denial of a reasonable alternative standard. Under the regulatory framework described above, Defendant's wellness program is exempted from the nondiscrimination provisions of § 1182(b)(1) "only if" it complies with all five criteria, including the provision of a reasonable alternative standard. *See* 29 C.F.R. § 2590.702(f)(3). If, as Plaintiff alleges, the wellness program does not provide a reasonable alternative standard or does not provide notice of the availability of a reasonable alternative standard, then Plaintiff has alleged facts to demonstrate it is an illegal surcharge and that Plaintiff has suffered an injury-in-fact by virtue of paying it. In ruling on a motion to dismiss for lack of standing, the Court must "accept as true all material allegations of the complaint." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Taking Plaintiff's allegations as true, he has paid an unlawful surcharge and has therefore suffered a cognizable injury.

Guidance promulgated by the Department of Labor supports this understanding of Plaintiff's injury and the parties' relative burdens of proof. In a June 2013 final rule interpreting 29 C.F.R. § 2590.702, the Department of Labor stated that the five criteria set forth above "must be satisfied in order for the plan or issuer to qualify for an exception to the prohibition on discrimination." Incentives for Nondiscriminatory Wellness Programs in Group Health Plans, 78 Fed. Reg. 33158, 33160 (June 3, 2013). The Department of Labor then explained that compliance with these five criteria constitutes "an affirmative defense that can be used by plans and issuers in response to a claim that the plan or issuer discriminated under [ERISA] nondiscrimination provisions." *Id.* If the regulatory exception to the nondiscrimination rule in 29 U.S.C. § 1182(b)(1) is an "affirmative defense," then Plaintiff's allegations that it is a discriminatory surcharge that had to be paid are sufficient to make out its prima facie claim of injury. Defendant would then bear the burden to establish an exception to the prohibition on discrimination by showing compliance with the five regulatory criteria. At this juncture, where factual disputes about the nature and availability of Defendant's reasonable alternative standard remain unresolved, it would be improper for the Court to dismiss for lack of standing based on an affirmative defense to liability. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1278 (stating that "affirmative defenses may not be raised by motion to dismiss" except where "the defense raises no disputed issues of fact").

While the Court has identified no similar cases within this Circuit, other district courts around the country appear to have unanimously rejected standing challenges to similar § 1182(b)(1) claims. *See e.g.*, *Bokma v. Performance Food Grp., Inc.*, 783 F. Supp. 3d 882, 893-94 (E.D. Va. 2025) ("Plaintiffs sufficiently allege that they suffered a real monetary injury that was concrete and particularized to them, in the form of the $600 annual tobacco surcharge that was periodically deducted from their paychecks."); *Lipari-Williams v. Mo. Gaming Co., LLC*, 339 F.R.D. 515, 524 ("The standing requirement is satisfied here because Plaintiffs have alleged that Defendant caused them monetary loss by imposing a fee that was unlawful."); *Chirinian v. Travelers Cos., Inc.*, No. 24-cv-3956

(LMP/DTS), 2025 WL 2147271, at *5 (D. Minn. July 29, 2025) ("[Plaintiff's] payment of a fee that she had a statutory right not to be charged counts as a concrete injury for standing purposes." (internal quotation marks and citation omitted)); *Mehlberg v. Compass Grp. USA, Inc.*, No. 24-cv-04179-SRB, 2025 WL 1260700, at *4 (W.D. Mo. Apr. 15, 2025) ("Plaintiffs have standing because they have adequately alleged that Defendant caused them monetary loss by imposing an unlawful fee."); *Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*, 2025 WL 2779899, at *6 (W.D. Tenn. Sept. 26, 2025) ("[I]f the surcharge is illegal, it matters not whether Plaintiff can get out of paying it and whether she knew of those steps."). Absent persuasive argument from Defendant, the Court sees no reason to deviate from this body of law.

## B.    Claims Three and Five

Defendant seeks dismissal of Claims Three and Five, which are premised on Defendant's tobacco surcharge. Plaintiff asserts that Defendant does not offer a reasonable alternative standard for spouses/partners based on the following language in the HSP:

> Colleagues and spouse/partners enrolled in the HSP may be subject to an annual $500 surcharge if they use tobacco/nicotine or non-FDA-approved nicotine-based products (including vaping) four or more times per week. If subjected to the surcharge, the surcharge will be deducted from your paychecks pro-rata per pay period. For questions regarding the surcharge or your tobacco/nicotine status, and for information on how you may satisfy an alternative standard to avoid the $500 surcharge -- contact **CVS Health HR Service Center** at **1-888-694-7287**; the **CVS Health HR Service Center** will work with you (and, if you wish, your doctor) to satisfy the alternative standard.

(ECF No. 17-3 at 23). Plaintiff argues that, while both "[c]olleagues and spouse/partners" are required to pay the surcharge, only the employee—referred to in the second-person singular as "you" or "your"—is offered the ability to avoid the surcharge. Plaintiff's Claim Three asserts an ERISA violation based on a failure to provide a reasonable alternative standard for all plan participants. (FAC at 13-14). Plaintiff's Claim Five asserts a similar

ERISA violation based on a failure to give notice of the availability of a reasonable alternative standard for all plan participants. (*Id.* at 14-15).

In the Motion, Defendant argues that Claims Three and Five fail because there is no indication that the reasonable alternative standard is not available to spouses. (Mot. at 21). Defendant argues that the terms "you" and "your" refer to all plan participants, not just the primary beneficiary, and points to other locations in the HSP where the term "you" is used interchangeably to refer to the employee and the employee's dependents. Defendant also argues that the FAC lacks any factual allegations showing that Plaintiff, his spouse, or any other employees' spouses were denied a reasonable alternative standard based on the language of the HSP.[2]

As an initial matter, however, Defendant's arguments about the availability of a reasonable alternative standard appear to be an affirmative defense to liability, not a deficiency in Plaintiff's prima facie case. As discussed above, the Department of Labor has promulgated rules that refer to the wellness program exception in 29 C.F.R. § 2590.702(f)(3) as an "affirmative defense" to liability for a discriminatory surcharge. *Supra*, 78 Fed. Reg. at 33160. In the absence of any contrary argument from Defendant, the Court will assume for purposes of this Motion that the Department of Labor's guidance is controlling. If the wellness program exception to § 1182(b)(1) is merely an affirmative defense, the Court cannot adjudicate it on a motion to dismiss unless it "raises no disputed issues of fact." *Scott*, 746 F.2d at 1378. Here, there are numerous disputed issues of fact raised by the affirmative defense, including questions as to the nature and applicability of Defendant's reasonable alternative standard. Accordingly, these issues are not properly before the Court on a motion to dismiss.

---

[2] Defendant also argues that the FAQs confirm the availability of a reasonable alternative standard for spouses. However, because this argument would require the Court to consider extrinsic evidence, thereby converting the motion to one for summary judgment, the Court declines to consider this argument at this stage. *See Lee*, 250 F.3d at 688.

Even if the wellness program exception is not an affirmative defense, however, the Court could not determine this issue on a motion to dismiss. Claims Three and Five partially pose questions of contract interpretation—namely, whether the HSP includes spouses in the reasonable alternative standard. While courts may resolve contractual claims on a motion to dismiss "if the terms of the contract are unambiguous . . . [,] a motion to dismiss should not be granted where the contract 'leaves doubt as to the parties' intent.'" *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1069 (C.D. Cal. 2008) (quoting *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986)); *see also Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1066 (E.D. Cal. 2006) ("[T]he construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." (quoting *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992))). Under California law, a contractual provision is considered ambiguous where it is "susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999). In such circumstances, courts "may receive parol evidence to aid in determining the parties' intentions." *In re Marriage of Nassimi*, 3 Cal. App. 5th 667, 688 n.33 (2016).

The Court finds, for purposes of this Motion, that the language of the contract is ambiguous. As Plaintiff argues, the HSP requires both "[c]olleagues and spouse/partners" to pay the tobacco surcharge, but it states only that "you" may satisfy an alternative standard to avoid the $500 surcharge. (ECF No. 17-3 at 23). As used in the HSP, the word "you" could reasonably be understood to mean the employee or both the employee and their participating spouse.

On the one hand, there is no affirmative indication anywhere in the HSP that spouses are excluded from participation. Some other portions of the HSP seem to use the term "you" interchangeably, at times referring exclusively to employees and at other times apparently referring to both employees and their spouses. For example, the first paragraph of the HSP reads as follows:

> This Health Savings Plan (the 'HSP') is an important employee benefit designed to help keep good health care affordable for *you and your family*. It provides benefits for preventive care and access to special programs that focus on helping *you* stay healthy, plus the coverage *you* need when faced with an illness or injury.

(*Id.* at 8 (emphasis added)). As Defendant argues, the first sentence clearly uses "you" to mean the employee, as distinguished from "you and your family." Yet the second sentence appears to use "you" to mean all participants in the program, since it would make little sense to describe the coverage as only applying to the employee when both employees and their spouses are eligible to enroll.

On the other hand, the HSP clearly uses the second-person singular in the sentence immediately preceding the discussion of the reasonable alternative standard, referring to "your paychecks." Additionally, in describing the spouse surcharge, the HSP is more deliberate in distinguishing between the employee and the beneficiary spouse:

> Effective June 1, 2024, colleagues enrolled in the HSP will be subject to an annual $1,200 surcharge if *your spouse/partner* has the option to elect subsidized medical coverage through *their* employer, but instead enrolls in the HSP. If subjected to the surcharge, the surcharge will be deducted from *your* paychecks pro-rata per pay period. If when enrolling in the HSP *you* do not attest that *your spouse/partner* does ***not*** have access subsidized medical coverage through *their* employer, CVS Health will assume that *your spouse/partner* has access to other coverage, and the surcharge will apply. For questions regarding the surcharge or how *you* can attest whether *your enrolled spouse/partner* has access to subsidized employer provider medical coverage -- contact **CVS Health HR Service Center** at **1-888-694-7287**; the **CVS Health HR Service Center**.

(*Id.* at 23 (emphasis added)). The clear delineation between "you" and "your spouse" in describing one surcharge suggests that the HSP might be making the same distinction in describing the tobacco surcharge.

Because the contract appears to use the words "you" and "your" to mean different things in different places, the HSP's description of who is eligible for the reasonable alternative standard is ambiguous. At the very least, resolving this ambiguity will require resorting to extrinsic evidence of the parties' intentions, which the Court cannot consider on a motion to dismiss. Thus, for purposes of this Motion, the Court cannot resolve the ambiguity as to the scope of the reasonable alternative standard.

## C.    Validity of Agency Regulations

Defendant next argues that Plaintiff's Third and Fifth Claims should be dismissed to the extent that they are based on agency regulations that contradict the authorizing statute. (Mot. at 23). Defendant contends that regulations require a reasonable alternative standard to be made available only where compliance with the wellness program is "unreasonably difficult" or "medically inadvisable." Defendant notes that the FAC does not allege that Plaintiff's wife falls into either of these categories, and it interprets this silence to mean that Plaintiff believes his spouse should be entitled to a reasonable alternative standard regardless of whether she can satisfy these preconditions. Defendant argues that, "[t]o the extent" this is Plaintiff's position, "this Court is not beholden to the DOL regulations as the controlling interpretation of the statute," and must instead exercise its own independent judgment. (*Id.* at 24 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 393 (2024)).

Defendant's argument misinterprets Plaintiff's position. Plaintiff has made no argument that his spouse should be entitled to a reasonable alternative standard regardless of whether she can satisfy the statutory and regulatory conditions. Instead, as discussed above with respect to standing, Plaintiff's position is that he need only show that the reasonable alternative standard is facially inadequate to allege an injury based on the discriminatory tobacco surcharge. The Court agrees with this position. If Defendant's reasonable alternative standard is non-compliant, then the tobacco surcharge is facially unlawful as to *all* HSP participants, not just those who would qualify for a reasonable alternative standard. *See* 29 C.F.R. § 2590.702(f)(3) (stating that a wellness program "does not violate the provisions of this section *only if* all of the following requirements are

-16-

satisfied," including the requirement to make the full reward "available to all similarly situated individuals" (emphasis added)).  Moreover, as discussed above, the Court finds that it is Defendant that bears the burden to show, as an affirmative defense, that its wellness program complies with all five criteria under 29 C.F.R. § 2950.702(f)(3).  Plaintiff therefore need not allege that his wife qualifies for the reasonable alternative standard.

To the extent Defendant instead intends to argue that the regulations issued by the Department of Labor are invalid, Defendant has identified no ambiguity in the authorizing statute or any conflict between the regulations and the authorizing statute.  The regulations in 29 C.F.R. § 2950.702(f)(3)(iv) almost precisely mirror statutory provisions of the Affordable Care Act, 42 U.S.C. § 300gg-4(j)(3)(D), which were made applicable to group health plans under 29 U.S.C. § 1185d(a)(1).  Both the regulations and the statute make clear that a reasonable alternative standard need only be made available for individuals for whom it is "unreasonably difficult" or "medically inadvisable" to participate in the wellness program.  29 C.F.R. § 2950.702(f)(3)(iv)(A); 42 U.S.C. § 300gg-4(j)(3)(D)(i).  Moreover, both ERISA and the Affordable Care Act explicitly authorize the Department of Labor to promulgate regulations.  *See* 42 U.S.C. § 300gg-4(n) ("Nothing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section."); 29 U.S.C. § 1191c ("The Secretary, consistent with section 104 of the Health Care Portability and Accountability Act of 1996, may promulgate such regulations as may be necessary or appropriate to carry out the provision of this part.").  In the absence of any identified conflict or ambiguity, Defendant has not shown a different conclusion should be reached as to the meaning of the statute.

### D.    Fiduciary Duty Claim

Defendant seeks dismissal of Plaintiff's Sixth Claim for breach of fiduciary duty.  Plaintiff's breach of fiduciary duty claim is enabled by 29 U.S.C. § 1132(a)(2), which provides that "[a] civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."  Section 1109, in turn, states that

"[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that (1) the defendant was a fiduciary; and (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).

Defendant argues that Plaintiff has not alleged a breach of fiduciary duty because the FAC identifies only injuries to individual participants, not to the ERISA plan as a whole. (Mot. at 25-26). Defendant also argues that Plaintiff has identified only acts taken in Defendant's capacity as a "settlor," not in its capacity as a fiduciary of the ERISA plan. (*Id.* at 27-28). Alternatively, Defendant argues that Plaintiff has not plausibly alleged a misuse of plan assets because there is no allegation that employee contributions were used for anything other than payment of plan benefits and expenses. (*Id.* at 29).

In opposition, Plaintiff argues that Defendant breached its fiduciary duty by collecting an illegal surcharge, thereby diminishing the amount Defendant had to contribute to the plan, harming the plan and enriching Defendant. (Opp. at 23). Plaintiff argues that Defendant engaged in several fiduciary acts, including exercising discretionary authority over the disposition of plan assets, collecting the surcharge, withholding participants' funds from their paychecks, and determining which employees would be reimbursed. (*Id.* at 24). Plaintiff further argues that ERISA requires fiduciaries to monitor their programs for compliance, and the act of collecting an illegal fee is itself a breach of fiduciary duty. Finally, Plaintiff argues that the FAC adequately alleges misuse of plan assets because employee contributions are assets of the plan. (*Id.* at 25).

The Court agrees with Defendant that Plaintiff has not stated a claim for breach of fiduciary duty because the FAC identifies only harm to individual participants, not to the

ERISA plan itself. Plaintiff summarizes the theory behind his fiduciary duty claim as follows:

> (i) Defendant held in trust the funds collected from the Tobacco/Nicotine surcharge, (ii) Defendant reduced its own costs associated with funding the plan and forestalled Defendant's obligations to make contributions thereto based on the illegal assessment and collection of the Tobacco/Nicotine surcharge, (iii) Defendant's collection of the illegal Tobacco/Nicotine surcharge diminished the amount Defendant had to contribute to the plan thereby benefiting Defendant and harming the plan, and (iv) as a result of the same Defendant enriched itself at the expense of the plan.

(Opp. at 23 (citing FAC ¶¶ 71-75)). The problem with this theory arises at the third step. While Defendant's allegedly unlawful tobacco surcharge did reduce Defendant's costs and enrich Defendant, it did so solely at the expense of individual participants, not "at the expense of the plan." This is because the plan would receive the same amount of funds regardless of whether Defendant charged the tobacco surcharge. Only the source of those funds would change. The FAC confirms as much, stating that Defendant's contributions to the plan "equaled the amount by which the plan's claims and administrative expenses exceeded all participant contributions, including the 'Tobacco/Nicotine' surcharge funds." (FAC ¶ 74). Nowhere does the FAC allege that Defendant used the tobacco surcharge funds for any purpose other than satisfying the claims and expenses of the plan.

Because the plan would have received the same funding regardless of whether Defendant charged the tobacco surcharge, Plaintiff has not identified any harm to the plan, as distinct from harm to the individual participants. This is fatal to Plaintiff's fiduciary duty claim. As the Supreme Court has explained, the drafters of § 1109(a) "were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). As a result, suits under § 1132(a)(2) must be "brought in a representative capacity on behalf of the plan as a whole," *id.* at 142 n.9, and plaintiffs may not seek "a remedy for individual injuries [as] distinct from plan

injuries," *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008); *see also Mass. Mut. Life Ins. Co.*, 473 U.S. at 144 ("Congress did not intend [§ 1109] to authorize any relief except for the plan itself."). Thus, as one district court considering a similar § 1132(a)(2) claim put it, charging an allegedly unlawful tobacco surcharge is not a breach of fiduciary duty because it "would have only served to *benefit* the Plan." *Chirinian*, 2025 WL 2147271, at *11. Because "the Plan has more funds than it would have possessed absent the alleged breach of [Defendant's] fiduciary duty, [Plaintiff] fails to allege a loss to the plan that can be made good under Section 1132(a)(2)." *Id.* (internal quotation marks and citation omitted).

While the Court is aware that some other district courts have reached a different conclusion under similar circumstances, the Court is unpersuaded by their reasoning. In *Bokma*, the court rejected the argument that plaintiffs had not "plausibly plead[ed] a loss to the entire Plan" because "Plaintiffs and members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks." *Bokma*, 783 F. Supp. 3d at 903. Similarly, in *Mehlberg*, the court concluded that the plan had suffered a loss based on the allegation that the defendant "kept the illegal tobacco surcharge to offset its own contributions, when those funds should have been deposited into the Plan." *Mehlberg*, 2025 WL 1260700, at *7. But as discussed above, these losses are merely "individual injuries [as] distinct from plan injuries." *LaRue*, 552 U.S. at 256. Because Plaintiff has identified no injury to the plan itself, the fiduciary duty claim fails.[3] The Court therefore DISMISSES Claim Six. However, because it is not yet clear that amendment would be futile, the Court grants leave to amend on this claim.

---

[3] The Court also finds the decision in *Bailey* to be distinguishable because the plaintiff in that case alleged that the defendant "withheld funds from the Plan and thus harmed it." *Bailey*, 2025 WL 2779899, at *20. There is no allegation here that the tobacco surcharge funds were withheld from the plan. Instead, the FAC states that Defendant used the proceeds from the tobacco surcharge to fund the plan's claims and administrative expenses. *See* (FAC ¶¶ 73-74).

### E.   ERISA Preemption

Finally, Defendant argues that Plaintiff's Seventh Claim under California Insurance Code § 10965.9 is preempted by ERISA.  (Mot. at 14).   ERISA contains an express preemption provision, which provides that "the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title." 29 U.S.C. § 1144(a).   To provide some "workable standards" for the "relate to" language, the Supreme Court has identified two categories of state laws preempted by ERISA.  *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016).  First, "ERISA pre-empts a state law if it has a 'reference to' ERISA plans," *id.*, meaning that it "is premised on the existence of an ERISA plan or if the existence of the plan is essential to the claim's survival," *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (internal quotation marks and citation omitted).   Second, "ERISA pre-empts a state law that has an impermissible connection with ERISA plans, meaning a state law that governs a central matter of plan administration or interferes with nationally uniform plan administration." *Gobeille*, 577 U.S. at 320 (internal quotation marks, citation, and alterations omitted).

Defendant argues that Plaintiff's Seventh Claim is preempted under both of these standards.  First, Defendant contends that the Seventh Claim has a "reference to" an ERISA plan because "the Surcharges that Plaintiff challenges exist solely because of an ERISA plan."  (Mot. at 17).   Second, Defendant argues that the Seventh Claim has an "impermissible connection with" an ERISA plan because the application of the surcharges is a "central matter of plan administration."   Defendant also argues that requiring compliance with the California Insurance Code would interfere with nationally uniform plan administration, since it would require the national HSP to comply with state laws in each jurisdiction in which the surcharges are assessed.  (*Id.* at 18).  Defendant further argues that the statutory exception for state laws that "regulate[] insurance," 29 U.S.C. § 1144(b)(2)(A), does not apply because the HSP is a "non-insured, self-funded plan."  (*Id.* at 16); *see FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("[S]elf-funded ERISA plans

are exempt from state regulation insofar as that regulation relates to the plans." (internal quotation marks and alterations omitted)). Finally, Defendant argues that California Insurance Code § 10965.9(a) does not apply to group health benefit plans by its own terms. (Mot. at 20).

In opposition, Plaintiff argues that § 10965.9 is not preempted by ERISA because it "merely affects costs." (Opp. at 26 (citing *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 87 (2020)). Plaintiff argues that § 10965.9 regulates only health insurance rates, not the scope of substantive coverage. As such, Plaintiff contends that there is no impermissible connection between the statute and ERISA. Plaintiff also contends that § 10965.9 itself does not reference ERISA, since it is generally applicable to health benefit plans, not solely ERISA plans. (*Id.* at 27-28).

The Court need not decide the preemption issue because California Insurance Code § 10965.9 is facially inapplicable to group health benefit plans. As Plaintiff alleges in the FAC, § 10965.9(a) limits the "characteristics of an individual" that a health insurer may consider in establishing insurance rates. Cal. Ins. Code § 10965.9(a). However, by its own terms, § 10965.9 applies only to "individual health benefit plans." *Id.* Nowhere in the statute does it suggest that "group health benefit plans," like the HSP at issue here, are subject to a similar restriction. The statutory definitions make this distinction explicit, defining the term "health benefit plan" to include both "individual" and "group" health insurance policies. Cal. Ins. Code § 10965. Elsewhere, the statute distinguishes between "group health benefit plans" and "individual health benefit plans" with respect to small employer coverage options. Cal. Ins. Code § 10965.02. Because the statutory scheme draws a distinction between individual and group health benefit plans and limits the application of § 10965.9 to individual health benefit plans, § 10965.9 has no application here. The Court therefore DISMISSES Claim Seven. The Court finds that leave to amend is not warranted because "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS, in part, and DENIES, in part, the Motion as follows:

1.    Plaintiff's Claim Seven for breach of California Insurance Code § 10965.9 is DISMISSED, without leave to amend;

2.    Plaintiff's Claim Six for breach of fiduciary duty is DISMISSED, with leave to amend;

3.    The Motion is otherwise DENIED; and

4.    The Court STRIKES from the record the filings at ECF Nos. 17-7 to 17-10 and ECF Nos. 19-7 to 19-10.

Should Plaintiff seek to amend the FAC, he may file an Amended Complaint within twenty-one (21) calendar days from the issuance of this Order, curing those deficiencies identified in this Order for which leave to amend has been granted. If Plaintiff does not file an Amended Complaint within twenty-one (21) calendar days, the FAC will become the operative complaint, and Defendant shall thereafter file a responsive pleading within fourteen (14) days.

**IT IS SO ORDERED.**

DATED:  January 16, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE